**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

IN RE: AA 10000 Corp.,                    :
                                          :
                                          :          CASE NO.   07-06601 (ESL)
                                          :              Chapter 11
        Debtor                            :
                                          :
                                          :
_____ :

**OPINION AND ORDER**

This case came before the court on December 6, 2007, for an evidentiary hearing on the Emergency Motion Requesting Order to Use Cash Collateral filed by AA 10000 Corp. ("Debtor") on November 13, 2007 (Dkt. 9),[1] pursuant to 11 U.S.C. § 363 (the "Cash Collateral Motion"), and the opposition by Debtor's senior secured creditor, Western Bank Puerto Rico ("Westernbank"). (Dkt. 24). For the reasons set forth below, the court DENIES Debtor's Cash Collateral Motion.

**Background and Procedure:**

Debtor filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code on November 7, 2007. The schedules filed with Debtor's petition identify Westernbank as the sole senior secured creditor in the amount of $ 10.1 million dollars (Dkt. 1, Sched. D). The stated value of Debtor's entire collateral base in this schedule is $ 10.1 million dollars. Westernbank is also listed as having unsecured claims worth approximately $ 8.2 million dollars (Dkt. 1, Sched. F). It has been stipulated by the parties that Westernbank is undersecured. The Debtor is not challenging that Westernbank has a valid and continuing lien over the cash

_____

[1] References to items in the docket of this case will be to "Dkt. ___".

collateral according to the Commercial Transactions Act of the Commonwealth of Puerto Rico for the purpose of considering the Cash Collateral Motion.

The court held a preliminary hearing on Debtor's Cash Collateral Motion on November 20, 2007 (Dkt. 30, transcript at Dkt. 31), wherein the parties reached a short-term, one week interim agreement pending a final hearing on the use of cash collateral. The court authorized Debtor to use $47,300 to pay for critical operating expenses, as agreed to by the parties, and scheduled a final hearing for November 29, 2007. The November 29, 2007 hearing was continued as per Debtor's counsel's request due to the illness and his impending surgery. The court held an in-chamber's conference instead. (Dkt. 38). The short-term interim order for the use of cash collateral was renewed until the new hearing date, that is December 6, 2007. On December 6, 2007, the court held a final hearing on Debtor's Cash Collateral Motion.

*Debtor's Cash Collateral Motion (Dkt. 9)*:

The basic facts underlying Debtor's Cash Collateral Motion can be summarized as follows: a) Debtor and Westernbank have a secured debtor/creditor relationship pursuant to various credit facilities extended to Debtor under the terms of a master Loan and Security Agreement (the "Loan"); b) Debtor owes Westernbank approximately $18 million dollars in secured credit lines under the Loan; c) $ 3 million of Westernbank's claim is secured by the cash collateral comprising inventory and accounts receivable with a "net" value of $1.79 million, the use of which is presently before the court, (Dkt. 9 at 2), and d) Debtor needs to use the cash collateral to maintain the day to day operations, maintain the Debtor's value as a going concern and protect the assets of the estate for the benefit of creditors.

In order to be authorized the use of cash collateral, Debtor's "proffer of adequate protection" consists of, 1) a replacement lien on inventory and accounts receivable generated post-petition from the use of cash collateral, and 2) monthly cash interest payments. (Dkt. 9 at 5).

*Westernbank's opposition:*

Westernbank opposes Debtor's use of cash collateral alleging that "Debtor has: (a) no right to use pre-petition cash collateral of Westernbank, as the same has been transferred to and is the property of Westernbank pursuant to a pre-petition foreclosure (Dkt. 12); (b) a continuously deteriorating operation and financial condition that generates insufficient funds for the Debtor to fully satisfy its recurring obligations to Westernbank or its suppliers; (c) no equity in any assets, as all are encumbered to Westernbank (Dkt. 1); and (d) no purchasers or refinancing alternatives that could even remotely provide a viable exit strategy pursuant to which creditors, such as Westernbank, will be paid." (Dkt. 24 at 1-2). Westernbank asserts it has a perfected security interest in the Debtor's assets that extends to all post-petition proceeds generated from the collateral, and is undersecured. Westernbank argues that it foreclosed Debtor's accounts receivable prior to Debtor's bankruptcy petition pursuant to the terms of the loan and to unrevised UCC 9-502, *Collection rights of secured party*, as adopted in September 1996 by the Puerto Rican legislature and codified in 19 L.P.R.A. § 2202 (Laws of Puerto Rico Annotated, LexisNexis of P.R. 2005) (the "P.R.-UCC"). In support of its contention, Westernbank filed a *Motion to Inform of Pre-petition Foreclosure on the Debtor's Accounts*, Dkt. 12, dated November 13, 2007. This motion includes exhibits of notices of default and foreclosure sent to Debtor and Debtor's customers dated October 12, 2007. (Dkt. 12, Exh. A-B; Dkt.14). Westernbank also started a pre-petition foreclosure action on November 6, 2007 before the Superior Court of Puerto Rico, Bayamon Part. (12/6/07 Hearing, Joint Exhibit II).

Westernbank's basic legal argument is that the Debtor no longer has any proprietary

interest in the disputed cash collateral, especially in the accounts receivable. Westernbank argues that by the terms of the loan agreement with Debtor and the authority of the P.R.-UCC, the pre-petition notice of default to Debtor and the notices to Debtor's customers constitute extra-judicial foreclosure over the accounts receivable. (See, e.g., Dkt. 14 at 3; Dkt. 24 at 4; Dkt. 32).

After reviewing the pleadings and the evidence presented by the parties; Westernbank's notices of default and foreclosure sent to Debtor and to Debtor's customers on October 12, 2007 (Dkt. 12, Exh. A-B; Dkt. 14); and the provisions of the 19 L.P.R.A. § 2202 (UCC 9-502) and related case law, we agree that Westernbank effectively made a pre-petition foreclosure over the accounts receivable. We also find that Westernbank's pre-petition foreclosure over the accounts receivable effectively extinguished Debtor's (and the estate's) "interest" in said collateral. Debtor no longer has an interest in the disputed collateral, and therefore this court will not authorize the Debtor to continue using it.

### Discussion

A motion to use cash collateral is governed by 11 U.S.C. § 363. Section 363(c)(2) forbids the trustee from using the cash collateral unless each entity with an interest in the cash collateral consents, or the court, after notice and a hearing, authorizes such use of cash collateral. Section 363(e) expressly authorizes the court to forbid or condition the use of cash collateral in order to provide adequate protection to the interested entity. Adequate protection must be afforded to secured creditors who have an interest in property. 11 U.S.C. § 361. Adequate protection is not defined, and the provisions in section 361 are illustrative and not exclusive of the remedies that can be fashioned by the court to secure the "indubitable equivalent" of the entity's interest in such property. Section 552(b)(1) recognizes that a secured party's interest attaches to the post-petition proceeds generated from property of the estate that was encumbered pre-petition, to the extent provided by the security agreement and applicable non-bankruptcy law. Except that the

- 4 -

court, after notice and a hearing and based on the equities of the case, may order otherwise regarding the ownership, use or apportionment of such post-petition proceeds.

*Use of Cash Collateral and Adequate Protection*:

The determination of a section 363 motion for the use of cash collateral is not governed by any set of neatly articulated legal standards. On the contrary, given the nature of bankruptcy and the distinct characteristics of every debtor, the decision requires a case-by-case analysis of the facts and circumstances of each case, prior to authorizing or denying the request to use cash collateral. *See, In re Dynaco Corp*, 162 B.R. 389, 394-95 (Bankr. D.N.H. 2002) (granting a cash collateral motion after finding adequate protection in the form of a viable business plan that would create sufficient value in replacement liens to protect creditor's interest); *accord, First Bank of Miller v. Wieseler*, 45 B.R. 871, 875 (D. South Dakota 1985) (denying cash collateral motion after rejecting adequate protection in future lien over non-existent property and stating that determining the value of creditor's interest is essential prior to deciding the issue of adequate protection). In order to decide Debtor's Cash Collateral Motion, this court must strike a balance between two irreconcilable interests. First, Westernbank, as secured creditor, must not be left unprotected by Debtor's unrestricted use of its cash collateral. However, achieving chapter 11's paramount goal of debtor rehabilitation will generally require granting debtor access to the cash collateral covered by the secured creditor's claim. *Dynaco,* 162 B.R. at 393; *Wieseler*, 45 B.R. at 876.

Prior to deciding the motion, the court must first determine if the disputed property is "cash equivalent whenever acquired in which the estate and an entity other than the estate have an interest [including proceeds]." 11 U.S.C. § 363(a). If the Debtor's estate no longer has an "interest" in the disputed property, the motion lacks legal foundation because we are no longer dealing with "cash collateral". On the other hand, if the property falls within the statutory

- 5 -

definition of "cash collateral", we must determine whether Debtor's proffer of adequate

protection under section 361 will sufficiently protect the secured creditor's interest in the value

of the cash collateral. *Dynaco, supra, at* 394-397. If such a finding is not made, the motion must

be denied. Because we find that Debtor's estate no longer has an interest in the disputed

collateral and may not continue using it for any purpose, the court cannot authorize or condition

its use.

*Unrevised UCC 9-502 and Notice Foreclosure (19 L.P.R.A. § 2202):*

Westernbank argues that the unrevised UCC section 9-502 allows the creditor to

foreclose on accounts receivable without the need for judicial action or otherwise resort to

remedies at law to recover its collateral. UCC 9-502(1) as codified in 19 L.P.R.A. § 2202

subsection 1 provides:

> (1) When so agreed and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled under section 2106 of this title.

In support of its argument, Westernbank cites to specific provisions of the loan agreement

with Debtor, which grant Westernbank the property rights in collections made "whether on

Accounts or as proceeds of Inventory or other Collateral." (Dkt. 32 at 2-3).  Furthermore,

Westernbank correctly argues that UCC 9-502 grants authority to lenders to execute extra-

judicial notice foreclosure on intangible collateral such as accounts receivable, without the need

to proceed in a court of law. (Dkt. 32 at 3-5). In support of its proposition of notice foreclosure

under UCC 9-502, Westernbank cites to several cases interpreting and commenting on the legal

effects of UCC 9-502. According to Westernbank, UCC 9-502 expressly authorizes notice

foreclosure upon accounts receivable. (Dkt. 32 at 4-5 (Westernbank's opposition) *citing, inter*

*alia, In re Prichard Plaza Assocs. Ltd. Patnership*, 84 B.R. 289, 297 (D. Mass 1988); *Allied*

- 6 -

*Building Products Corp. v. Federal Insurance Co.*, 729 F.Supp. 477, 479 (D. Md. 1990); *Bank of Kansas v. Hutchinson Health Services, Inc.*, 773 P.2d 660 (Kansas App. 1989); *Manufacturers & Traders Trust Co. v. Pro-Mation, Inc.*, 497 N.Y.S.2d 541 (N.Y. App. 1985); and *In re Contractors Equipment Supply Co.*, 861 F.2d 241 (9th Cir. 1988)).

The court finds Westernbank's arguments and supporting authorities to be persuasive and in accord with the policies of the UCC to keep commercial transactions flowing with minimal interruption to businesses and, hopefully, with little involvement or waste of limited judicial resources. When the Debtor received the notice of default on or about October 12, 2007 (Dkt. 12, Exh. A), it is unquestionable that Westernbank was immediately authorized to exercise it rights under the loan agreement, including the right to foreclose and exercise control over the collateral. Under these circumstances, UCC 9-502 creates and alternative method for foreclosing on accounts receivable and similar security interests such as chattel paper and instruments of indebtedness. *See, Interchange State Bank v. Rinaldi*, 696 A.2d 744, 750 (N.J. Super. 1997); *accord, Law & Practice of Secured Transactions: Working with Article* 9, Chapter 5. *Default* § 5.06 *Secured Party's Collection Rights* (2007). The commercial purpose for the wording of UCC 9-502(1) is to create an alternative system of non-judicial foreclosure, "for a secured party to foreclose a security interest in accounts receivable." *Western Decor & Furnishings Industries, Inc. v. Bank of America National Trust & Savings Assoc.*, 91 Cal.App.3d 293, 302 (Cal. App. 1979). "There is a problem of realizing on collateral for accounts receivable, as opposed to tangible collateral, thus section 9-502 subdivision 1 allows a creditor to collect directly from the account debtor without causing an interruption in business." *Id.* Consequently, UCC 9-502 "allows the assignee [creditor] to liquidate in the regular course of business by collecting whatever may become due on the collateral, whether or not the method of collection

contemplated by the security arrangement before default was direct (… 'notification financing') or indirect (… 'non-notification financing')." *See*, 10 Anderson U.C.C. §9-502:1 (3d. ed. 2007).

We find that "[t]he range of non-judicial enforcement actions under Article 9 depends on the type of collateral covered by the security interest. If the secured party holds intangible collateral on which payments are being made, additional action to take control of such collateral and enforce collections following default is authorized by § 9-502." *See* 1 Sec. Intersts in Pers. Prop. §18:5 (2007) (depicting the difference of possession between intangible and tangible collateral and how the latter requires possession pursuant to § 9-503). Accordingly, we find that the default and collection notices sent to Debtor and its customers places Westernbank in control of the accounts receivable. Pursuant to the loan agreement, the collateral is now the property of Westernbank, and no further action need be taken to enforce its interest in the collateral and divest the estate's interest in the same.

Because we find that the Debtor does not have an interest in the accounts receivable foreclosed prior to the petition date, there is no need to pass upon Debtor's alternative basis for relief, pursuant to 11 U.S.C. § 552(b) "equities of the case". Simply put, Westernbank stripped Debtor of its interest in and control over the disputed collateral nearly a month before the filing of Debtor's chapter 11 bankruptcy petition. The accounts receivable and any proceeds thereof are now and have been the property of Westernbank for as long as the bankruptcy has been in place. Equity will not come to the aid of Debtor under these circumstances.

### Conclusion:

In summary, cash collateral is property in which both the estate and entities such as Westernbank have an interest in. Debtor's may be given access to cash collateral with or without the consent of the interested entity if the court finds there is sufficient adequate protection for the entity's interest in the value of the cash collateral. However, in this case, Debtor no longer has an

- 8 -

interest in the disputed property deemed to be cash collateral for purposes of this motion. Debtor has been using the collateral on a limited basis pursuant to court order. Westernbank effectuated a valid pre-petition foreclosure on the property and is not willing to allow Debtor to continue using the collateral. Debtor has no equity in the collateral and since the assets constituting the cash collateral are insufficient to secure Westernbank's claim over the same, there are no equitable grounds to continue blocking Westerbank's use and unfettered access to the collateral consisting of accounts receivable. For the reasons stated herein, Debtor's Emergency Motion Requesting An Order To Use Cash Collateral is hereby DENIED.

SO ORDERED.

San Juan, Puerto Rico, this 11th day of, December 2007.

_____
ENRIQUE S. LAMOUTTE
U.S. Bankruptcy Judge